IN RE the COMMITMENT OF Bernard G. TAINTER:

STATE of Wisconsin, Petitioner-Respondent,

v.

Bernard G. TAINTER, Respondent-Appellant.†

Court of Appeals

*No. 01–2644. Submitted on briefs November 11, 2002.—Decided November 26, 2002.*

2002 WI App 296

(Also reported in 655 N.W.2d 538.)

† Petition to review denied 2-19-03.

388

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jack E. Schairer*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Bernard Tainter appeals a judgment entered on a jury verdict finding him a sexually violent person, an order committing him to institutional care pursuant to WIS. STAT. ch. 980,[1] and an order denying his motion for post-trial relief. Tainter argues (1) ch. 980 violates due process because it does not require a separate finding of serious difficulty in controlling behavior; (2) the jury instructions misled the jury and violated his due process rights; (3) a new trial is warranted because the case was not tried in the county where the predicate offense was committed; (4) a new trial is, warranted because the State's use of actuarial instruments to predict Tainter's likelihood of reoffense was not fully tried; and (5) changes to ch. 980 violate equal protection. We determine issues one and two are controlled by our supreme court's decision in *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, and reject both arguments. Further, we conclude a new trial is not warranted under issues

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

three and four. Finally, we reject Tainter's claim under issue five because it is controlled by our decision in *State v. Williams*, 2001 WI App 263, 249 Wis. 2d 1, 637 N.W.2d 791. Accordingly, we affirm the trial court's judgment and orders.

## BACKGROUND

¶ 2. The State sought to commit Tainter pursuant to WIS. STAT. ch. 980 in April 2001. Tainter had been convicted of first-degree sexual assault of a child in 1995. The assault took place in Sawyer County. The State filed the ch. 980 petition in Barron County because it was where Tainter was scheduled to be released. At the time the petition was filed, Tainter was incarcerated at the Jackson Correctional Facility in Jackson County.

¶ 3. Tainter requested his commitment trial be held in Sawyer County because he is a Native American and wanted to be tried in a county with a larger population of Native Americans than Barron County. The trial court denied this motion. In addition, Tainter requested the State be precluded from introducing the results of a number of actuarial instruments measuring Tainter's likelihood of reoffense. The court denied this motion as well.

¶ 4. At trial, the State called Dr. Richard McKee, a psychologist, who testified that it was substantially probable that Tainter would commit a future act of sexual violence because of his mental disorder. He determined Tainter suffers from pedophilia, sexually attracted to females, nonexclusive type. In addition, he said Tainter had an antisocial personality disorder and substance abuse problems that made it more likely that Tainter would commit a future act of sexual violence.

392

McKee said he assessed Tainter's likelihood of reoffense by using actuarial instruments, specifically the Rapid Risk Assessment of Sex Offender Recidivism (RRA-SOR), Static-99, and the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R). McKee said these instruments showed Tainter has a high risk of reoffense and because of Tainter's mental disorders, McKee concluded Tainter was likely to commit a future act of sexual violence.

¶ 5. In addition, the State presented the testimony of Dr. Sheila Fields, also a psychologist. She diagnosed Tainter with pedophilia. She also completed the RRSAOR, Static-99 and the MnSOST-R, and concluded that it was substantially probable that Tainter would commit a future act of sexual violence because of his mental disorder.

¶ 6. The jury found Tainter to be a sexually violent person and the court ordered his commitment. Tainter brought post-trial motions challenging the sufficiency of the evidence, the court's refusal to change venue and the admission of the results of the actuarial instruments. The court denied Tainter's motions and he now appeals.

## DISCUSSION

¶ 7. Tainter raises several arguments. He claims (1) WIS. STAT. ch. 980 violates due process because it does not require a separate finding that the person being committed has serious difficulty controlling his or her behavior; (2) the standard jury instruction given in his trial misstated the law, mislead the jury, and violated substantive due process; (3) he should receive a new trial because he had a right to have his trial in Sawyer County; (4) he should receive a new trial

because the proper use of the actuarial instruments was not fully tried; and (5) changes to ch. 980 violate equal protection.

*A. Due Process*

■

¶ 8. We first address Tainter's claim that WIS. STAT. ch. 980 violates due process because it does not require a separate finding that the person being committed has a substantial difficulty in controlling his or her behavior. He argues this finding is required by the United States Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407 (2002), where the Court considered Kansas' sexually violent persons commitment statute. In *Crane*, the Court concluded due process requires a finding that persons being committed have a serious inability to control their behavior. *Id.* at 412–13.

¶ 9. Our supreme court's decision in *Laxton* controls our resolution of this issue. In *Laxton*, the court determined WIS. STAT. ch. 980 satisfied the due process requirements of *Crane*. *Laxton*, 2002 WI 82 at ¶¶ 22–23. The court ruled ch. 980's requirement of proving a nexus between the mental disorder and an individual's dangerousness implicitly involves proof that the person has a serious difficulty in controlling his or her behavior. *Id.* The court specifically determined ch. 980 does not require a separate finding of the person's inability to control his or her behavior to comply with due process. *Id.* at ¶ 2. Consequently, we reject Tainter's claim.

## B. *Jury Instruction*

█

¶ 10. We also determine *Laxton* controls Tainter's claim that the pattern jury instruction regarding the commitment of sexually violent persons, WIS JI—CRIMINAL 2502, misstated the law and violated his due process rights. Tainter argues this instruction did not properly reflect the Supreme Court's decision in *Crane*. Our supreme court, however, rejected the same argument in *Laxton*, concluding because the jury instruction accurately tracked the statute and because the statute complied with due process, the jury instruction was proper. *Id.* at ¶ 27.

## C. *Right to Trial in Sawyer County*

¶ 11. Tainter next argues he is entitled to a new trial because he had a right to have his trial in Sawyer County, where he committed the predicate sexual assault. Prior to trial, Tainter sought to change the trial's venue to Sawyer County because he wanted a jury pool with more Native American members. He does not, however, make this argument on appeal. Instead, he contends he had a right to have his trial in Sawyer County because of WIS. STAT. § 980.05(1m), which grants all the constitutional rights of criminal defendants to persons being tried under WIS. STAT. ch. 980. Tainter argues that because criminal defendants have the right under art. I, § 7, of the Wisconsin Constitution to have their trial in the county where the crime was committed, he has the right to have his commitment trial in the county where he committed the predicate offense.

¶ 12. A determination on the constitutional rights afforded to WIS. STAT. ch. 980 respondents involves an interpretation of ch. 980. *State v. Sorenson*, 2002 WI 78, ¶ 18, 254 Wis. 2d 54, 646 N.W.2d 354. We review constitutional and statutory interpretation questions de novo. *Id.* "If the language of the statute clearly and unambiguously sets forth the legislative intent, we need not look beyond the language to determine the meaning of the statute." *Id.* (citation omitted).

¶ 13. WISCONSIN STAT. § 980.05(1m) unambiguously provides ch. 980 respondents with the same constitutional protections afforded to criminal defendants. *Id.* at ¶ 19. It states: "At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person."

¶ 14. WISCONSIN CONST. art. I, § 7, grants criminal defendants the right to a trial "by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law." Tainter claims this provision conflicts with WIS. STAT. § 980.02(4) and (5), which allow the commitment trial to be held in the county where the person committed the predicate offense, the county where the person is to reside upon discharge, the county where the person is incarcerated, or Dane County. Tainter argues his right under WIS. STAT. § 980.05(1m) should trump § 980.02(4) and (5) and we should grant him a new trial. We disagree.

¶ 15. We determine the language of the two statutes and the constitution shows the legislature did not intend to extend a defendant's right to trial in the county where the crime was committed to persons being tried under WIS. STAT. ch. 980. While the legislature intended to afford individuals in ch. 980 proceedings the constitutional rights afforded to criminal defendants, its enactment of a statute specifically addressing venue reveals its intent not to extend a criminal defendant's right to trial in the county of the offense. Subsections 980.02(4) and (5) specifically deal with venue, while § 980.05(1m) is a general statute addressing constitutional rights. Where a general statute conflicts with a specific statute, the specific statute prevails. *State v. Smith*, 106 Wis. 2d 151, 159, 316 N.W.2d 124 (Ct. App. 1982).

¶ 16. Our conclusion is consistent with our earlier construction of WIS. STAT. § 980.05(1m). In *State v. Bernstein*, 231 Wis. 2d 392, 605 N.W.2d 555 (Ct. App. 1999), we determined § 980.05(1m) did not grant a person being committed under ch. 980 the same right to a jury trial as a criminal defendant because of § 980.05(2)'s specific jury trial provisions. *Id.* at 399–400. We concluded the specific statute must control over the general one and further determined that allowing § 980.05(1m) to control would render § 980.05(2) superfluous. *Id.* at 400. Here, we are presented with a similar situation. Section 980.02(4) and (5) are specific statutes and interpreting § 980.05(1m) to control would render them meaningless.

¶ 17. Even if we were to conclude the right to a trial in the county where the crime was committed extended to WIS. STAT. ch. 980 proceedings, WIS. CONST.

art. I, § 7 does not prohibit the legislature from enacting statutes requiring trials be held in certain counties. *See Dolan v. State*, 48 Wis. 2d 696, 702, 180 N.W.2d 623 (1970). In *Dolan*, the supreme court determined a statute requiring all correctional institution escapes to be tried in Dodge County did not conflict with art. I, § 7. *Id.* The court read the language "which county or district shall have been previously ascertained by law" to allow the legislature to provide that escapes from custody could be tried in only one county. *Id.* Similarly, the legislature could provide that ch. 980 proceedings could be held in a county other than the one in which the predicate offense was committed.

## D. Actuarial Instruments

¶ 18. Tainter next argues we should exercise our discretionary power under WIS. STAT. § 752.35 to grant a new trial in the interest of justice because the proper use of the actuarial instruments as predictors of his reoffense risk was not fully tried. To establish that the real controversy has not been fully tried, Tainter must convince us that either the jury was precluded from considering important testimony that bore on an important issue or that certain evidence that was improperly received clouded a crucial issue. *State v. Cleveland*, 2000 WI App 142, ¶ 21, 237 Wis. 2d 558, 614 N.W.2d 543.

¶ 19. Tainter's claim addresses both prongs of this test. Tainter contends the trial court improperly admitted testimony regarding instruments. In addition, he argues the jury was unable to consider a journal article

398

published after trial that criticized the predictive ability of the actuarial instruments. We reject both of Tainter's arguments.

¶ 20. First, we determine the trial court properly admitted testimony regarding the actuarial instruments. Evidentiary rulings are reviewed for an erroneous exercise of discretion. *See Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991). A court properly exercises discretion when it considers the facts of record under the proper legal standard and reasons its way to a rational conclusion. *Id.* Here, the trial court determined the instruments were relevant because they were "the type of information commonly and reasonably relied up[on] by experts in the field of sex offender risk assessment to draw conclusions about future risk." In its ruling, the court made clear that Tainter was free to cross-examine the State's experts regarding the instruments as to their weight and credibility. We conclude this was a proper exercise of discretion.

¶ 21. Tainter urges us to reconsider the "gatekeeper" function of Wisconsin trial courts regarding expert testimony. This role is limited, especially when compared with the federal court system. *Green v. Smith & Nephew AHP, Inc.*, 2000 WI App 192, ¶ 21, 238 Wis. 2d 477, 617 N.W.2d 881, *aff'd*, 245 Wis. 2d 772, 629 N.W.2d 727 (2001). In Wisconsin, scientific testimony is admissible if it is an aid to the jury or reliable enough to be probative. *Id.* Once the relevancy of the testimony is established and the witness is qualified as an expert, the reliability of the evidence is a weight and credibility

issue for the fact finder and any reliability challenges must be made through cross-examination or by other means of impeachment. *Id.*

¶ 22. We recently certified *Conley Pub. Group, Ltd. v. Journal Communications, Inc.*, No. 01–3128, *cert. granted* Sept. 26, 2002, where we asked the supreme court to reconsider the gatekeeper function regarding expert testimony in an antitrust case. Tainter argues because of this certification, we should reconsider the gatekeeper role in this case as well. The certified case, however, concerns antitrust issues. Wisconsin courts are to conform state antitrust law to federal antitrust law. *Prentice v. Title Ins. Co.*, 176 Wis. 2d 714, 724, 500 N.W.2d 658 (1993). The question in the certification is whether, in the antitrust context, Wisconsin courts should adopt the more restrictive federal gatekeeper role for expert testimony. It does not challenge the overall gatekeeper function in Wisconsin and we decline Tainter's invitation to reconsider it here.

¶ 23. Tainter also argues he is entitled to a new trial because the jury was not able to hear important evidence, namely a journal article, published after his trial that questioned the reliability of one of the actuarial instruments. Discretionary reversal is a formidable power that should be exercised sparingly and with great caution. *See State v. Watkins*, 2002 WI 101, ¶ 79, 255 Wis. 2d 265, 647 N.W.2d 244. We decline to exercise it here. Prior to trial, Tainter listed several journal articles describing the shortcomings of the actuarial instruments on his exhibit list. Our review of the record shows he never used them to cross-examine the state's experts. In light of Tainter's failure to use similar

400

evidence at his trial, we determine it would not be in the interest of justice to grant a new trial based on a journal article published post-trial.

*E. Equal Protection*

¶ 24. Finally, Tainter argues the legislature's changes to WIS. STAT. ch. 980 in 1999 by Wis. Act 9 violate his right to equal protection. Among these changes is a requirement that persons committed under ch. 980 be institutionalized and does not allow them to petition for release for at least eighteen months. Tainter claims this violates his right to equal protection because persons committed under other procedures, such as WIS. STAT. ch. 51, are not subject to the same restrictions.

¶ 25. Tainter acknowledges we rejected these arguments in *Williams*, 2001 WI App 263. At the time he filed his brief, however, the supreme court was considering a petition for review in *Williams*. The supreme court has since denied the petition. Consequently, we reject Tainter's equal protection argument.

*By the Court.*—Judgment and orders affirmed.