In re the Marriage of: David R. Dewey, Petitioner-Appellant,

v.

Violet Y. Dewey, Respondent-Respondent.

Court of Appeals

*No. 94–0095. Submitted on briefs May 10, 1994.—Decided October 6, 1994.*

(Also reported in 525 N.W.2d 85.)

For the petitioner-appellant the cause was submitted on the briefs of *Christopher L. Snyder* of *Hart, Falk & Snyder* of Edgerton.

For the respondent-respondent the cause was submitted on the brief of *James H. Martin* of *New Legal Clinic* of Janesville.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J. David R. Dewey appeals from an order of the trial court ordering David to execute a qualified domestic relations order (QDRO)[1] to effectuate a division of his pension pursuant to a divorce decree. David contends that (1) his responsibility to execute a QDRO was extinguished when a bankruptcy court discharged all of his prepetition debts, and (2) the trial court's divorce decree did not vest his former spouse, Violet, with a one-half interest in David's pension because a QDRO was never filed with the pension plan administrator. We disagree, and therefore affirm.

## BACKGROUND

David and Violet were divorced on January 24, 1990. Pursuant to the property settlement, Violet was awarded a one-half interest in David's General Motors pension plan. The pension was not valued at the time of divorce. The trial court found that David's "pension benefits may be divided equally if a Qualified Domestic Relations Order is used by the court in dividing the marital estate of the parties." Nevertheless, David never executed a QDRO.

After the parties were divorced, David filed a petition in bankruptcy. David listed Violet on his bankruptcy schedule as a creditor whose claim arose pursuant to a property division in a divorce action, and

---

[1] To qualify for employer tax benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, pension plans must include a spendthrift provision that prevents the benefits from being assigned or alienated. 29 U.S.C. § 1056(d)(1). Congress, however, has crafted a statutory exception which permits the alienation of benefits to spouses, former spouses and children pursuant to a qualified domestic relations order, or QDRO. 29 U.S.C. § 1056 (d)(3)(A).

recorded the value of that debt as zero. He added that the pension was to be divided but that no QDRO had been filed with the court. Violet took no part in the bankruptcy proceeding. On September 21, 1990, the bankruptcy court discharged all of David's prepetition debts.

In 1992, after David retired from General Motors and was receiving his full pension benefits, Violet drafted a QDRO for his signature. David refused to sign it, contending that Violet's interest in the pension was discharged in bankruptcy. Violet moved the trial court for an order requiring David to sign the QDRO. On November 24, 1993, the trial court entered an order finding that the divorce judgment that divided the pension created a one-half vested interest in Violet, that the judgment terminated all legal and equitable interests David had in Violet's one-half interest in the pension, and that the division of the pension by the divorce judgment did not create a debt David owed to Violet. The trial court ordered David to execute a QDRO notwithstanding David's discharge in bankruptcy. David appeals.

## STANDARD OF REVIEW

■

To determine the effect that a judgment of divorce has upon a property division, we must construe § 767.255, STATS. Statutory interpretation presents a question of law which we review *de novo*. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992). In construing a statute, our purpose is to discern the legislature's intent and give it effect. *Id.* The first step is to examine the statute's language, and, absent ambiguity, it is our

duty to give the language its ordinary meaning. *Id.* at 225-26, 496 N.W.2d at 179.

To determine the character of Violet's property interest in David's pension, we construe the judgment of divorce as of the time it was entered. *Wright v. Wright*, 92 Wis. 2d 246, 255, 284 N.W.2d 894, 899 (1979), *cert. denied*, 445 U.S. 951 (1980). A court may not look beyond the terms of the judgment for aid in construing it unless it is ambiguous. *Id.* A judgment is ambiguous if it is reasonably susceptible to different constructions. *Weston v. Holt*, 157 Wis. 2d 595, 600, 460 N.W.2d 776, 779 (Ct. App. 1990).

## PROPERTY OR DEBT

David contends that the division of his pension pursuant to the divorce decree resulted in an obligation to Violet. According to David, Violet's claim arose prepetition and was entirely discharged by the bankruptcy court.[2] Thus, the trial court erroneously exercised its discretion when it failed to recognize the bankruptcy court's discharge by ordering David to execute a QDRO. We disagree.

Under the bankruptcy code, an obligation of one spouse made pursuant to a property division is dischargeable. *See* 11 U.S.C. § 523(a)(5). However, we

[2] Under federal bankruptcy law, a debt means a "liability on a claim," 11 U.S.C. § 101(12), and a claim means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

concur with the majority of the federal courts that hold that a division of a pension plan pursuant to a divorce decree does not create an obligation in the employee-spouse but creates two separate property interests that become vested at the moment the decree is entered. *See, e.g., Bigelow v. Brown*, 168 B.R. 331, 335 (Bankr. N.D. Ill. 1994); *In re Naydan*, 162 B.R. 204, 206 (Bankr. W.D. Ark. 1993); *Byler v. Byler*, 160 B.R. 178, 180-81 (Bankr. N.D. Okla. 1993); *Wilson v. Wilson*, 158 B.R. 709, 711 (Bankr. S.D. Ohio 1993); *Adamo v. Ledvinka*, 144 B.R. 188, 193 (Bankr. M.D. Ga. 1992); and *Zick v. Zick*, 123 B.R. 825, 829 (Bankr. E.D. Wis. 1990).

Section 767.255, STATS., provides that upon every judgment of divorce, "the court shall divide the property of the parties and divest and transfer the title of any such property accordingly." The language of this statute is clear and unambiguous. The effect of a divorce decree is to extinguish any prior interests that the parties might have had in an asset and creates new interests which become vested at the moment the divorce decree is entered.

We next turn to the terms of the judgment to determine the character of Violet's interest in the pension. The trial court awarded Violet "a one-half interest in [David's] General Motors Retirement Pension Plan." The trial court also instructed that David's "pension benefits may be divided equally if a Qualified Domestic Relations Order is used by the court in dividing the marital estate of the parties." The terms of this property division are not ambiguous but susceptible to only one reasonable interpretation: the judgment vested in Violet a one-half interest in the pension at the moment the divorce decree was entered. Upon the entry of the divorce, David retained only a one-half interest in his pension. Consequently, Violet's one-half interest was

neither part of David's bankruptcy estate[3] nor was it a debt David owed to Violet.[4]

Although the asset is currently held by General Motors, this asset is Violet's sole and separate property and any money owed to Violet is owed to her by General Motors. The judgment clearly provides that David was required to execute a QDRO to effectuate the division of his pension. David's responsibility is to do so.

David is also incorrect when he argues that *Spankowski v. Spankowski*, 172 Wis. 2d 285, 493 N.W.2d 737 (Ct. App. 1992), supports his contention that the division of the pension created a debt. In *Spankowski*, the trial court awarded ownership of the pension to the husband but ordered him to pay his former spouse one-half of its value and interest according to a prearranged schedule because, at that time, it was not possible to assign an interest in the pension pursuant to a QDRO. *Id.* at 288, 493 N.W.2d at 739. The husband later filed a petition in bankruptcy and listed the money owed to his former wife as a debt. *Id.*

---

[3] Property of the bankruptcy estate includes all property in which the debtor has a legal or equitable interest at the time the bankruptcy petition is filed. 11 U.S.C. § 541(a)(1). Additionally,

[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

[4] David claims that Violet should have asserted her rights to this property in the bankruptcy court. David cannot create an obligation by listing a non-existent debt in his bankruptcy petition. We understand that debtors frequently list disputed debts in bankruptcy petitions, but that is done as a matter of caution. Doing so creates no rights.

On appeal, we concluded that the money awarded to the husband's former wife was a debt that was discharged in bankruptcy. *Id.* at 292-93, 493 N.W.2d at 741.

David was not awarded 100% ownership interest in his pension and subsequently ordered to pay part of his pension benefits every month to Violet. Rather, the trial court divided the pension equally thereby divesting David of 50% of that pension. Unlike *Spankowski*, there was no debt owed to Violet that David could discharge in bankruptcy.

## VESTED OR CONTINGENT INTEREST

Alternatively, David contends that the division of his pension pursuant to the divorce decree created only a contingent property interest in one-half of the pension in favor of Violet. According to David, Violet's interest in his pension was contingent upon his either executing a QDRO or paying a portion of the benefits over to Violet as he received them. David contends that Violet's interest did not vest since a QDRO was neither executed nor filed by the time David filed his bankruptcy petition. Thus, Violet's interest in one-half of the pension was as a creditor. We disagree.

The trial court found that the divorce decree granted Violet a one-half vested interest in the pension and therefore it was of no consequence that a QDRO had not been executed. According to the trial court, approving a QDRO is

> not appreciably different than receiving a deed to real estate or a title to a car that was awarded by a judgment of divorce. This motion is only to require the petitioner to cooperate in the paperwork neces-

278

sary to effectuate the division of the pension accomplished by the judgment of divorce.

In *Long v. Donahue*, 148 B.R. 904, 906 (Bankr. W.D. Mo. 1992), the debtor had filed a petition in bankruptcy a few months after a divorce decree divided his pension with his former spouse but before a QDRO was executed. The non-employee spouse filed a motion for relief from the automatic stay in the bankruptcy court to allow the state court to enter a QDRO. *Id.* The court in *Long* determined that the divorce decree gave the non-employee spouse an equitable property interest, the right to obtain a QDRO, which was neither a debt nor dischargeable in bankruptcy. *Id.* at 907. Thus, the court concluded that the entry of a QDRO was akin to exercising a property right and not subject to the discharge. *Id.* at 908.

We agree with the trial court and the reasoning in *Long* that the fact that a QDRO has yet to be entered has no effect upon Violet's interest in the pension. The divorce decree divested one-half of David's interest in the pension and transferred it to Violet. Section 767.255, Stats. Violet's interest in one-half of David's pension was not a part of his bankruptcy estate nor was it a dischargeable debt. It was Violet's separate property upon which the timing of the execution of the QDRO had no effect.

*By the Court.*—Order affirmed.