James H. CAMERON, Petitioner-Respondent,

v.

Jane P. CAMERON, N/K/A Jane Wise, Defendant-Appellant.†

Court of Appeals

*No. 95–0311. Submitted on briefs August 14, 1995.—Decided October 10, 1995.*

(Also reported in 541 N.W.2d 164.)

†Petition to review granted.

618

619

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy M. Doyle* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Donald L. Hoeft* and *Steven E. Antolak* of *London, Anderson, Antolak & Hoeft, Ltd.* of Minneapolis.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Jane Wise appeals an order creating a trust into which the total amount of child support arrearages owed by her former husband, James Cameron, are to be paid. Wise also appeals that portion of the order directing that Cameron's $6,000 contribution toward Wise's attorney fees are to be taken from the trust and paid to Wise's attorney. Because we conclude that the trial court has the authority to create a trust for child support arrearages and reasonably exercised its discretion when it created such a trust, we affirm that part of the order creating the trust. However, we conclude that the trial court unreasonably exercised its discretion when it ordered that Cameron's contribution toward Wise's attorney fees be taken from the trust. Therefore, we reverse and remand with directions that the trial court determine how Cameron's contribution to Wise's attorney fees should be paid.

A divorce judgment for Wise and Cameron was entered in April 1987. The divorce judgment required Cameron to pay 29% of his gross income as support for the three minor children in Wise's primary physical placement. In December 1993, Wise moved the court for an order directing Cameron to pay past due child support. Wise also asked the trial court to determine an appropriate amount of current child support and to

award her attorney fees and costs on the motion. Cameron responded with a cross-motion that asked the trial court to provide a "fair and equitable disposition of all amounts claimed due as child support."

The trial court refused to retroactively reduce Cameron's child support obligation and found that Cameron owed $118,140 in child support arrearages. The trial court created a trust into which the total amount of arrearages is to be placed. Additionally, the trial court ordered that $6,000 be taken from the trust and paid to Wise's attorney as contribution toward Wise's attorney fees for the proceeding.

This appeal raises three narrow issues. First, does the trial court have the authority to create a trust into which child support arrearages are to be paid? Second, if the trial court has this authority, did it reasonably exercise its discretion in creating such a trust in this case? Third, did the trial court misuse its discretion when it ordered that attorney fees be paid from the trust? We examine each issue in turn.

Whether the trial court has the authority to impose a trust on child support arrearages requires interpretation of ch. 767, STATS., which is a question of law we review de novo. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992). Section 767.25, STATS., authorizes trial courts to order child support payments. In doing so, the court may protect and promote the minor children's best interests by setting aside a portion of the child support in a separate fund or trust for the support, education and welfare of the children. Section 767.25(2), STATS.[1]

---

[1] Section 767.25(2), STATS., states: "The court may protect and promote the best interests of the minor children by setting

In this case, both parties agree that the trial court relied on § 767.25(2), STATS., for the authority to create the trust, although the trial court did not explicitly identify that statute as the basis for its authority.[2] Accordingly, we must determine whether the trial court has authority under § 767.25 to create a trust after the initial judgment or order has been entered.

It is undisputed that at the time of the initial child support judgment or order, a trial court may protect and promote the best interests of the minor child by setting aside a portion of the child support in a separate fund or trust. Section 767.25(2), STATS. While a court under § 767.32(1)(a), STATS., may revise judgments and orders, this section does not specifically address the standard a court should use in deciding whether to revise a judgment or order to include a § 767.25(2) trust. However, it does provide the court with authority to "make any judgment or order respecting any of the matters that such court might have made in the original action." Section 767.32(1)(a).[3] Because the statute does not provide a standard for revising an

aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children."

[2] The trial court did, however, refer to the factors enumerated in § 767.25(1m), STATS., that it considered before imposing the trust.

[3] Additionally, § 767.32(1)(a), STATS., provides that a revision of judgment or order with respect to an amount of child or family support may be made only upon a finding of a substantial change in circumstances. Because the issue in *Resong v. Vier*, 157 Wis. 2d 382, 459 N.W.2d 591 (Ct. App. 1990), and the instant case does not involve revising the amount of future child support, this statutory authority is not dispositive.

order or judgment to include a trust, this court in *Resong v. Vier*, 157 Wis. 2d 382, 391-92, 459 N.W.2d 591, 594-95 (Ct. App. 1990), enunciated the following standard:

> Section 767.25(2), Stats., permits the establishment of a trust when doing so would be in the best interests of the child. Nonetheless, the custodial parent should not lightly be stripped of her ability to make decisions concerning rearing her child. Eliminating a custodial parent's right to make spending decisions is more akin to altering the parents' custodial powers than it is to a modification of the amount of child support. Therefore, once support has been awarded absent a trust, we hold that the trial court must apply the "necessary to the best interest of the child" standard used in modifying custody determinations if it wishes to establish a sec. 767.25(2) trust. *See* sec. 767.325, Stats. (Footnote omitted.)

In other words, because the trust would take from a custodial parent the discretion to spend both child support arrearage funds and future child support funds, it is appropriate to require the same standard of necessity as that required by § 767.325, STATS., which governs revision of legal custody and physical placement orders.

While the facts of this case present a trust funded solely by a child support arrearage, rather than by an arrearage and future support payments, we conclude that our holding in *Resong* applies. Thus, before the trial court can impose a trust that will be funded by the child support arrearage, the trial court must find that such a trust is necessary to the child's best interests.

625

It is important that we address one other aspect of the *Resong* decision. We stated: "In the absence of factual findings suggesting the mother was incapable or unwilling to wisely spend the child support money, it was error for the court to dictate how those funds be spent. It was also error for the court to retroactively impose a trust on child support arrearages." *Id.* at 392, 459 N.W.2d at 595. Then, in a footnote, we stated: "However, had the trial court made proper factual findings, such a modification may have been proper. Because the original support order was entered prior to August 31, 1987, the trial court has the power to make retroactive modifications. *Schulz v. Ystad*, 155 Wis. 2d 574, 456 N.W.2d 312 (1990)." *Resong,* 157 Wis. 2d at 392 n.8, 459 N.W.2d at 595 n.8. We conclude that while it was error for the trial court under the facts in *Resong* to impose a trust on child support arrearages, a trial court may impose a trust on child support arrearages, as we indicted in footnote eight, if it makes the proper factual findings. The requisite factual findings are those illustrating that the trust is necessary to protect the child's best interests.

Next, we examine whether the trial court reasonably exercised its discretion by creating a trust funded by the child support arrearage. We must uphold a discretionary decision of the trial court if there are facts in the record to support the decision. *In re Estate of Anderson,* 147 Wis. 2d 83, 93, 432 N.W.2d 923, 928 (Ct. App. 1988). The trial court found that Wise did not need arrearage payments for the present support of the children because Cameron will be making sufficient monthly support payments. However, the trial court expressed concern that Cameron's specialty coffee bus-

iness is volatile and that his income could change substantially. Wise argues this finding of fact is not supported by the evidence before the trial court. She states:

> Neither of the CPA's who testified, nor James Cameron himself, testified to any particular volatility in his business. Nor did any of those three witnesses describe a likelihood, or even possibility, of future downturns. There is simply no factual basis for the Judge's determination that Mr. Cameron will at some point in the future be unable to meet his current support obligation of $2,500 per month.

We disagree. Our examination of the record indicates there was evidence to support the court's finding that Cameron's income could change substantially. First, Cameron testified that when he first began the business, it took him two and a half years before he made a profit. Second, Cameron's accountant, Gerald Anderson, testified that in the years 1987-93, Cameron's business had to retain earnings rather than distribute them, because the business had problems obtaining financing.[4] Third, the court noted in its consideration of the appropriate level of future child support that Cameron was going through a second divorce, which could affect his ability to make child support payments;

---

[4] Anderson testified that one of the problems of obtaining financing is that the company uses bins and fixtures that are placed in customers' businesses. Anderson explained: "[A] banker looking at that type of asset on the corporate books views it as being worthless because in a liquidation situation they would have to go get it and it's just not worth the effort to go get it." As a result, the company's credit worthiness is reduced substantially, requiring it to retain earnings so the company can obtain financing and get good credit from banks.

the trial court heard testimony that Cameron was already giving his wife $3,000 a month in support. All of this evidence supports the trial court's finding that Cameron's income could change substantially.

■

Citing the possibility of change in Cameron's income as its reason for the trust, the trial court stated:

> This trust is not for postmajority educational needs. It is to provide a cushion for the children during their minority. . . . A trust assures the children, as best can be expected, sufficient resources for their support in the event James Cameron is unable to provide for the children at the current level of support.

While the trial court did not explicitly find that the trust was "necessary to the best interests of the children," we conclude that the trial court's reasons for imposing the trust satisfy such a standard.[5] Accordingly, we conclude the trial court reasonably exercised its discretion when it ordered the creation of a trust to be funded with the child support arrearage.

---

[5] This is not the first time we approved the creation of a trust that will be used for the child's support in the event the payor is unable to meet his or her support obligation in the future. In *Mary L. O. v. Tommy R. B.,* 189 Wis. 2d 440, 525 N.W.2d 793 (Ct. App. 1994), *review granted,* 531 N.W.2d 325 (Mar. 21, 1995), this court, applying paternity statutes, concluded that where there was doubt as to the payor's ability to maintain his present income in the future, it was appropriate to create a trust and set aside money for the future support of the child in case the income is not available in the future. *Id.* at 451, 525 N.W.2d at 798 (applying §§ 767.475(7) and 767.51(5), STATS.).

Next, Wise argues that even if the trial court has authority to establish a trust in this case, the trust is unworkable and therefore, "intrinsically unfair or contrary to existing case law." Wise argues the trust as established is unworkable because it invites Cameron to manipulate his own future income so that the trial court will find the current child support order is too high, reduce the current order and direct that the balance of support needs be met by using the trust funds. We conclude that this argument is unpersuasive. If Cameron is inclined to hide his true income so that the court will use the trust to meet support needs, he is also likely in the absence of a trust to hide his true income so that the court will reduce his support payments based on ability to pay. We are satisfied that the current mechanisms for child support enforcement are equipped to deal with parents who attempt to avoid making payments and that Wise's fear is not a sufficient reason to defeat the trust.

Finally, Wise argues that the trust is unworkable because it does not describe the ultimate disposition of the funds. We agree that this may present problems in the event the trust funds are not eventually used to support the children. However, this is an issue the trial court will confront if there are still funds available when the youngest child turns eighteen. Only after the trial court has exercised its discretion will the disposition issue be ripe for this court's determination. For now, we hold the lack of a plan for trust dissolution will not defeat the trial court's exercise of discretion creating the trust.

■ The final issue before this court is Cameron's contribution toward Wise's attorney fees. A trial court may order one party to contribute to the other's attorney fees. This is a discretionary award which will be upheld unless the trial court unreasonably exercised its discretion. *Bisone v. Bisone*, 165 Wis. 2d 114, 123-24, 477 N.W.2d 59, 62 (Ct. App. 1991). Neither Wise nor Cameron appeals the trial court's determination that Cameron should contribute $6,000 toward Wise's attorney fees. However, Wise appeals the trial court's decision to take these funds from the trust the trial court established.

■ The trial court did not explain its reason for taking the money from the trust rather than making Cameron pay the amount from his own funds. However, in light of the compelling reasons articulated to justify creating a trust for the benefit of the children, it is inconsistent to allow this trust to be reduced for Cameron's benefit. We conclude that the trial court unreasonably exercised its discretion by ordering Cameron's contribution for attorney fees be paid from the trust created for the children's best interests. Therefore, we remand with directions that the trial court determine how Cameron's contribution to Wise's attorney fees should be paid.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.